**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHAD W. GRINDLE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 08-CV-0668-CVE-TLW |
| | ) |
| MIKE MULLIN, Warden, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Before the Court is Respondent's motion to dismiss petition for habeas corpus as time barred by the statute of limitations (Dkt. # 5). Petitioner, a state inmate appearing *pro se*, filed a response (Dkt. # 7) to the motion to dismiss. Respondent's motion is premised on 28 U.S.C. § 2244(d) (imposing a one-year limitations period on habeas corpus petitions). For the reasons discussed below, the Court finds that the petition was not timely filed. Respondent's motion to dismiss shall be granted and the petition for writ of habeas corpus shall be dismissed with prejudice.

*BACKGROUND*

Petitioner challenges his conviction entered in Ottawa County District Court, Case No. CF-2002-253. See Dkt. #1. The docket sheet provided by Respondent reflects that on April 1, 2003, the state district court found Petitioner guilty after accepting his plea of guilty to Child Sexual Abuse. See Dkt. # 6, Ex. 2. Petitioner was sentenced to ten (10) years imprisonment. Id. Petitioner did not file a motion to withdraw plea and did not otherwise perfect an appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). See id.

On July 17, 2008, Petitioner filed an application for post-conviction relief. See Dkt. # 6, Ex. 2. The state district court denied the application by order filed July 25, 2008. Id. Petitioner appealed

to the OCCA, and by order filed October 23, 2008, in Case No. PC-2008-0792, the OCCA affirmed the district court's denial of post-conviction relief. See Dkt. # 6, Ex. 3.

Petitioner commenced this habeas corpus action on November 14, 2008. See Dkt. # 1. In his petition, Petitioner asserts that his attorney provided ineffective assistance in failing to advise him that he would be subject to the "85% rule" imposed under state law for persons convicted of certain felony offenses.[1] See Dkt. # 1. As a result, Petitioner claims that his plea of guilty was not knowingly and voluntarily entered. Id. He states that "[a]fter I was sent to prison I was informed by prison authorities that I would have to serve 85% of my sentence before being eligible for parole." Id. He also claims that the Information failed to allege acts constituting the crime charged and was, therefore, fatally defective. Id. Respondent argues that consideration of Petitioner's claims is precluded by the one-year statute of limitations provided at 28 U.S.C. § 2244(d). See Dkt. # 5.

*ANALYSIS*

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[1] Effective July 1, 1999, a person committing one of an enumerated list of felonies, see Okla. Stat. tit. 21, § 13.1, on or after March 1, 2000, and convicted of the offense "shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections. Such person shall not be eligible for parole consideration prior to serving eighty-five percent (85%) of the sentence imposed and such person shall not be eligible for earned credits or any other type of credits which have the effect of reducing the length of the sentence to less than eighty-five percent (85%) of the sentence imposed." Okla. Stat. tit. 21, § 12.1.

2

>        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In general, the limitations period begins to run from the date on which a prisoner's conviction becomes final, but may also begin to run under the terms of § 2244(d)(1)(B), (C), and (D). Also, the limitations period is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period. § 2244(d)(2).

Application of the provisions of § 2244(d)(1)(A) to the instant case leads to the conclusion that this habeas petition was filed after the expiration of the one-year limitations period. Because Petitioner failed to file a motion to withdraw his plea of guilty in Case No. CF-2002-253, his conviction became final ten (10) days after pronouncement of his Judgment and Sentence, or on April 11, 2003. See Rule 4.2, *Rules of the Court of Criminal Appeals* (requiring the defendant to file an application to withdraw plea of guilty within ten (10) days from the date of the pronouncement of the Judgment and Sentence in order to commence an appeal from any conviction on a plea of guilty). As a result, his one-year limitations clock for any claim challenging his conviction, including the claims raised in the instant petition, began to run on April 11, 2003. Absent a tolling event, a federal petition for writ of habeas corpus filed after April 11, 2004, would be untimely. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline).

3

Although the running of the limitations period would be tolled or suspended during the pendency of any post-conviction or other collateral proceeding with respect to the pertinent judgment or claim properly filed during the limitations period, 28 U.S.C. § 2244(d)(2); Hoggro, 150 F.3d at 1226, Petitioner did not seek any post-conviction relief during the relevant period. Petitioner's application for post-conviction relief was not filed until July 17, 2008, or more than four (4) years after the April 11, 2004, deadline. A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations. See Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001). As a result, the post-conviction proceeding commenced by Petitioner after expiration of the limitations period did not toll the limitations period. Therefore, this action, commenced on November 14, 2008, appears to be untimely.

In response to the motion to dismiss, see Dkt. # 7, Petitioner first cites 28 U.S.C. § 2254(d)(1)(B), and alleges that State action created an impediment to filing this petition in violation of the Constitution and law of the United States. He also argues that his petition was timely filed under 28 U.S.C. § 2244(d)(1)(D) (providing that the one-year limitations period may begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). As a preliminary matter, the Court finds that Petitioner makes no argument applicable to his claim that the Information filed in Case No. CF-2002-253 was fatally defective because it failed to allege acts constituting the crime charged. For that claim, the one-year limitations period began to run under § 2244(d)(1)(A) when Petitioner's conviction became final. Unless Petitioner demonstrates entitlement to equitable tolling, that claim is time-barred.

Petitioner has failed to convince the Court that his one-year limitations period began to run under 28 U.S.C. § 2244(d)(1)(B), or (D). First, Petitioner has failed to provide a factual basis for his assertion concerning the applicability of § 2244(d)(1)(B) to this case. Nothing in the record supports a finding that the State has created an "impediment to filing an application" and that his one-year limitations period did not begin until the impediment was removed. Section 2244(d)(1)(B) does not apply to save this habeas action.

Next, Petitioner argues that under § 2244(d)(1)(D), his claims based on the "85% rule" are timely. Petitioner claims that he did not become aware of the issues related to the 85% rule "until on or about November 12, 2007 when the case of Pickens v. State, 2007 OK CR 18 was pointed out to him regarding the 85% rule requiring a defendant to serve 85% of their sentence before becoming eligible for parole consideration." See Dkt. # 7. On May 4, 2007, the OCCA issued the opinion cited by Petitioner, Pickens v. State, 158 P.3d 482 (Okla. Crim. App. 2007). In Pickens, the OCCA found merit to the defendant's claim, raised on *certiorari* appeal, that the trial court's failure to advise of the applicability of the 85% rule rendered his guilty pleas invalid as not knowing, voluntary, and intelligent. Petitioner asserts that under 28 U.S.C. § 2244(d)(1)(D), his one-year limitations period did not begin to run until November 12, 2007, when he learned about the Pickens decision.

The Court finds, however, that Petitioner's discovery of the Pickens decision did not restart the limitations period under § 2244(d)(1)(D). In his petition, Petitioner admits that after he was sent to prison, he was informed by prison authorities that he would have to serve 85% of his sentence before being eligible for parole. Although he does not provide a date certain for this notification, the Oklahoma Department of Corrections ("DOC") Case Management policies require case

5

managers to develop individualized accountability plans using an "Adjustment Review" form. See OP-060101, viewed at www.doc.state.ok.us. The form contains information concerning an inmate's sentence, including whether it falls under the 85% rule. See DOC 060203A. Thus, Petitioner became aware, or could have become aware through the exercise of due diligence, that his sentence fell under the 85% rule when he met with his case manager to review the "Adjustment Review" form, shortly after he was received into DOC custody in August 2003.[2] Petitioner's reliance on Pickens is based on the legal significance of facts long known to him. Recognition of the legal significance of a set of facts does not trigger application of § 2244(d)(1)(D). See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("[T]he trigger in Section 2244(d)(1(D) is (actual or imputed) discovery of the claim's 'factual predicate,' not recognition of the facts' legal significance."). Therefore, Petitioner's one-year period applicable to his claims concerning the 85% rule did not begin to run under § 2244(d)(1)(D) in November 2007, when he learned the legal significance of the Pickens decision. See Preston v. Gibson, 234 F.3d 1118, 1120 (10th Cir. 2000) (holding that state court decisions "did not restart the limitations period" as nothing in those decisions "alerted [the petitioner] to any factual basis for his claim"). Instead, his one-year period began to run when he discovered the "factual predicate" of his claim, i.e., when he was informed by prison authorities that he would have to serve 85% of his sentence before being eligible for parole consideration.

---

[2]According to the Department of Corrections website, www.doc.state.ok.us, Petitioner was received into DOC custody on August 22, 2003.

Even if the Court were to assume, for the sake of argument, that the one-year period began to run with the issuance of Pickens, the Court finds this action is still untimely.[3] The Pickens opinion was issued May 4, 2007. If credited with a start date of May 4, 2007, Petitioner had to file his federal habeas petition within one year, or on or before May 4, 2008. Petitioner would not be entitled to tolling under § 2244(d)(2) because he did not file his post-conviction application until July 17, 2008, or more than two (2) months beyond the deadline. As a result, the pendency of the post-conviction proceeding would not toll the limitations period. Therefore, the federal habeas petition, filed November 14, 2008, is untimely even if the filing date of the Pickens opinion served as the start date of Petitioner's one-year period.

The statute of limitations contained in § 2244(d) is not jurisdictional and may be subject to equitable tolling. See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998); see also Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). To be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir.2008) (quoting Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 1085 (2007)), so as to prevent him from timely filing his habeas petition. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to

---

[3]The Court notes that in Ferguson v. State, 143 P.3d 218 (Okla. Crim. App. 2006), an opinion issued August 30, 2006, or eight (8) months prior to issuance of Pickens, the OCCA held that a defendant's plea of *nolo contendere* was not knowing, voluntary, and intelligent, where the defendant had not been informed that he would be required to serve 85% of his sentence before becoming eligible for parole. Thus, the legal significance of Petitioner's claim that he had not been advised of the 85% rule prior to pleading guilty could have been discovered well before the OCCA issued Pickens.

"'show specific facts to support his claim of extraordinary circumstances and due diligence.'" Id. (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Petitioner has not demonstrated that he pursued his claims diligently; nor has he met the burden of pleading "rare and exceptional circumstances" sufficient to warrant equitable tolling. Gibson, 232 F.3d at 808. The Court recognizes that Petitioner appears *pro se* and avers that he is "unfamiliar with the laws and the procedural rules of DOC to properly raise these issues sooner." See Dkt. # 7. However, Petitioner's conclusory statement concerning his lack of legal knowledge is insufficient to demonstrate entitlement to equitable tolling. Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)); Miller, 141 F.3d at 978. As a result, Petitioner is not entitled to equitable tolling.

The Court concludes that this action is time-barred. Respondent's motion to dismiss shall be granted and Petitioner's petition for writ of habeas corpus shall be dismissed with prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Respondent's motion to dismiss petition for writ of habeas corpus as time barred by the statute of limitations (Dkt. # 5) is **granted**.

2. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice**.

3. A separate Judgment shall be entered in this case.

**DATED** this 11th day of June, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT